**FILED
CLERK**
1/29/2016 8:33 am
**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
METROPCS NEW YORK, LLC,

        Plaintiff,

  -against-

RIVERHEAD WATER DISTRICT,

        Defendant.
----------------------------------------------------------X

**ORDER**

15-CV-6311 (SJF)(SIL)

FEUERSTEIN, J.

On November 4, 2015, Plaintiff, MetroPCS New York, LLC ("MetroPCS" or "Plaintiff"), filed an action seeking, *inter alia*, to enjoin Defendant, Riverhead Water District (the "District" or "Defendant"), from impeding Plaintiff's installation of wireless cellular equipment on the District's property. For the reasons stated below, MetroPCS's motion for a preliminary injunction is denied.

**I.    BACKGROUND**

Pursuant to a lease agreement (the "Lease"), MetroPCS, a telecommunications carrier, is a tenant on a parcel of real property owned by the District, located at 644 Old Country Road, Riverhead, New York, NY (the "Premises"). [DE 1, Verif. Compl., at ¶¶ 1-2]. The Lease, executed on or about May 9, 2011, allows MetroPCS to install and to operate its wireless antenna facilities and associated equipment on a water tank situated on the Premises. *Id.* at ¶¶ 2-3, 21. Other telecommunications carriers, namely AT&T, Sprint, Verizon, and T-Mobile, also operate their wireless antenna facilities on the District's water tank. [*See* DE 10-1, Aff. ("Clerkin Aff."), at ¶ 21; DE 11, Aff. ("Clerkin Supp. Aff."), at ¶ 5]. Wireless antenna facilities allow telecommunications carriers to provide wireless communications networks for their customers,

enabling them to transmit voice and data signals. *Id.* at ¶ 3. In 2011, pursuant to the terms of the Lease, MetroPCS installed six (6) antennas on the water tank and other equipment, including coaxial cables, on the Premises. *Id.* at ¶ 31.

In May 2013, MetroPCS Communications, Inc., the former parent company of MetroPCS, merged with T-Mobile USA, Inc. ("T-Mobile") (the "Merger"); as a result, MetroPCS became a wholly owned subsidiary of T-Mobile. *Id.* at ¶ 18. Following the Merger, MetroPCS's wireless network "has[s] been migrated" to T-Mobile's network, which utilizes different technology than MetroPCS's network. [DE 1, Verif. Compl., at ¶ 4]. MetroPCS customers also "have been upgraded to T-Mobile's . . . network by upgrading to devices that are compatible with T-Mobile's network." *Id.* at ¶ 19. As a result, the former MetroPCS network will be shut down in 2015. *Id.* at ¶ 20.

MetroPCS's existing six (6) antennas on the District's water tank are "not operable" on T-Mobile's network. *Id.* at ¶ 34. On July 21, 2014, MetroPCS sought the District's consent: 1) to "swap[]" MetroPCS's existing antennas with six (6) new antennas compatible with T-Mobile's network; and 2) to "swap[]" three (3) coaxial cables, although MetroPCS now alleges that "consent is not required under the Lease." *Id.* at ¶ 35, Ex. C ("July 21, 2014 Ltr."). The District did not respond to MetroPCS's July 21, 2014 Letter. On November 17, 2014, MetroPCS sent a second letter to the District seeking consent to make the antenna and coaxial cable "replac[ements]," which MetroPCS claims is "permitted under the [Lease]." [DE 1, Verif. Compl., at ¶ 37, Ex. D]. Bench Strength Partners, Inc. ("Bench Strength"), retained by the District as its consultant, responded to MetroPCS on December 9, 2014, stating that "MetroPCS has no existing legal right to make the proposed changes" pursuant to the Lease, and seeking changes to the Lease terms, including a rent increase. *Id.* at ¶ 38, Ex. E. On February 12, 2015,

MetroPCS replied that it "has no interest in negotiating this matter any further." *Id.* at ¶ 53, Ex. F. On November 4, 2015, MetroPCS filed this action seeking preliminary and permanent injunctive relief. [DE 1, Verif. Compl.].

## II. DISCUSSION

### A. *Standard of Review: Preliminary Injunction*

To obtain a preliminary injunction, a plaintiff must demonstrate: (a) that "irreparable harm is likely in the absence of an injunction," *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008); (b) "either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief," *UBS Fin. Servs., Inc. v. West Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quotations and citation omitted)); and (c) "that the public's interest weighs in favor of granting an injunction," *Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24, 129 S. Ct. at 376. "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (quotations and citation omitted).

As "[i]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, . . . the moving party must first demonstrate that such injury is *likely* before the other requirements for the issuance of an injunction will be considered." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66-67 (2d Cir. 2007) (emphasis added); *Fox Ins. Co. v. Envision Pharm. Holdings, Inc.*, No. 09-0237, 2009 WL 790312, at *6 (E.D.N.Y. Mar. 23,

2009). "Issuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy . . . ." *Winter*, 555 U.S. at 22, 129 S. Ct. at 375-76 (emphasis added). To establish irreparable harm, the injury alleged by the movant must be "actual and imminent," not "remote or speculative," and not compensable through solely monetary damages. *Grand River Enter. Six Nations, Ltd.*, 481 F.3d at 66 (citing *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)). A party's "loss of reputation, good will, and business opportunities" resulting from a breach of contract may constitute irreparable harm, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004), such as where the party is threatened with a loss of a business, a "relatively unique product," or the ability to provide its product or service to the market or its customers, *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37, 38 (2d Cir. 1995) (citations omitted). There is no irreparable harm, however, where the loss of goodwill is doubtful and the loss of a profitable line of business is compensable through monetary awards. *Id.*; *Fox. Ins. Co.*, 2009 WL 790312, at *6.

In assessing irreparable harm, courts also consider whether a movant has unduly delayed seeking a preliminary injunction. *FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*, No. 14-cv-3685, 2015 WL 4162757, at *32 (E.D.N.Y. July 8, 2015); *see Tom Doherty Assocs., Inc.*, 60 F.3d at 39; *Env. Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 280 (E.D.N.Y. 2014). The Second Circuit has "found delays of as little as ten [10] weeks sufficient to defeat [a finding] of irreparable harm," except where there is "good reason" for the delay, such as "when a plaintiff is not certain of the infringing activity or has taken additional time to examine the infringing product." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144-45 (2d Cir. 2005); *see also Silber v. Barbara's Bakery, Inc.,* 950 F. Supp. 2d 432, 439 (E.D.N.Y. 2013)

4

(citations omitted) ("While delay does not always undermine an alleged need for preliminary relief, months-long delays in seeking preliminary injunctions have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompanying a motion for preliminary relief.").

### B. *No Likelihood of Irreparable Harm*

MetroPCS has failed to demonstrate a likelihood of irreparable harm in the absence of a preliminary injunction. Although it advances the well-established principle that preliminary injunctions may be warranted in cases involving real property, the facts of this case are distinguishable from those of its cited cases. *See, e.g.*, *Minard Run Oil Co. v. United States Forest Serv.*, 670 F.3d 236, 256 (3d Cir. 2011) (mineral rights); *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of America, Inc.*, 549 F.3d 1079, 1090 (7th Cir. 2008) (real property case involving, *inter alia*, a "real and irreparable" loss of goodwill, where movant sustained at least $30,000 in lost charitable contributions); *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989) (new construction physically obstructed movant's store); *East Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 828-29 (4th Cir. 2004) (owner excluded from own property and public interest in minimizing shortage in natural gas).

MetroPCS also cites cases where a preliminary injunction was issued to preserve a movant's right either to own or to occupy a specific parcel of real property that would be forfeited in the absence of an injunction. *See, e.g.*, *Tioronda, LLC v. New York*, 386 F. Supp. 2d 342 (S.D.N.Y. 2005) (eminent domain); *Workbench, Inc. v. Syblin Realty Corp.*, 140 A.D.2d 693, 528, N.Y.S.2d 888 (N.Y. App. Div. 1988) (right to occupy commercial space and enjoining defendants from selling or otherwise leasing the property to third parties); *South Amherst, Ltd. v. H.B. Singer, LLC*, 13 A.D.3d 515, 786 N.Y.S.2d 573 (N.Y. App. Div. 2004) (defendant not

permitted to sell real property in violation of plaintiff's right of first refusal). MetroPCS has not shown that any right it may possess to occupy space on the District's property would be forfeited in the absence of an injunction.

MetroPCS claims that it will face irreparable harm, as: 1) its "existing equipment . . . is not capable of operating on T-Mobile's network;" 2) the MetroPCS "network will be shut down this year [in 2015];" and 3) its "Antenna Facilities will not be able to transmit voice and data signals for Metro[PCS]'s customers." [DE 4, Pl.'s Mem. of Law, at 1, 10]. However, MetroPCS also represents that its network "ha[s] been migrated" to T-Mobile's network, and that its customers "have been upgraded to T-Mobile's . . . network by upgrading to devices that are compatible with T-Mobile's network." [DE 1, Verif. Compl., at ¶¶ 4, 19]. Thus, the District correctly points out that MetroPCS has not established that any of its customers would be adversely affected by the termination of the old MetroPCS network. [*See* DE 10, Def.'s Mem. of Law, at 10-11].

In addition, the uncertainty of the effect of MetroPCS's network termination on its customers' wireless services is indicated by statements that it: 1) "*may* impair [its] ability to provide its customers with high quality uninterrupted service;" 2) "*may* impair [its] ability to provide its customers with uninterrupted service;" and 3) "*could* also impact [its] ability to provide uninterrupted service to municipal emergency e911 personnel." [DE 4, Pl.'s Mem. of Law, at 1-2, 10 (emphasis added)]. Such speculative harms are "doubtful" and do not rise to the requisite standard of being "likely," "actual," or "imminent." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 129 S. Ct. 365, 375, 172 L. Ed. 2d 249 (2008); *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007); *Fox. Ins. Co. v. Envision Pharm. Holdings, Inc.*, No. 09-0237, 2009 WL 790312, at *6 (E.D.N.Y. Mar. 23, 2009).

This Court has previously held that speculative allegations of harm fail to establish a likelihood of irreparable harm. *See Fox Ins. Co.*, 2009 WL 790312, at *6 (Feuerstein, J.) ("Envision has not demonstrated that the very viability of its business is threatened absent an injunction. Envision's argument is that if a major retailer in its pharmacy network is not paid for prescriptions it has dispensed to [plaintiff's] Medicare participants, that retailer *may* cease doing business with Envision and *if* that occurred, Envision would *likely* fail to meet the Medicare access requirements, making it impossible for Envision to continue to serve its Medicare clients. Such speculative and conclusory allegations are insufficient to establish irreparable harm.").

MetroPCS's argument that an inability to replace its antennas and coaxial cables on the District's water tank "could . . . impact Metro[PCS]'s ability to provide uninterrupted service to municipal emergency []911 personnel, which is a matter of public safety," DE 4, Pl.'s Mem. of Law, at 2; *see id.* at 10, is speculative and misconstrues the nature of 911 wireless services. [*See* DE 10-1, Clerkin Aff., at ¶¶ 21, 24; DE 11, Clerkin Supp. Aff., at ¶¶ 4-6]. The "basic 911 rules require wireless service providers to transmit all 911 calls to a PSAP [or Public Safety Answering Point], regardless of whether the caller subscribes to the provider's service or not." [DE 11-1, Ex., at 2]. Multiple telecommunications carriers, namely AT&T, Sprint, Verizon, and T-Mobile, operate their antennas on the District's water tank. [*See* DE 10-1, Clerkin Aff., at ¶ 21; DE 11, Clerkin Supp. Aff., at ¶ 5]. MetroPCS's callers are able to transmit 911 calls through any of the other telecommunications carriers' antennas. Thus, MetroPCS cannot establish that any 911 calls are likely to be dropped in the absence of an injunction.

Moreover, any harm that MetroPCS may suffer, including loss of customers or the cost of relocation of its antennas, may be remedied by monetary damages. [*See* DE 10, Def.'s Mem. of Law, at 11]. Therefore, a preliminary injunction is unwarranted.[1]

MetroPCS has also delayed in seeking an injunction, thereby further weakening its claim of irreparable harm. MetroPCS acknowledges, "[the District] correctly points out . . . that Metro[PCS] has known of [the District's] refusal to allow access to swap the antennas *for some time*." [DE 12, Pl.'s Reply Mem. of Law, at 7 (emphasis added)]. Despite sending letters to the District in July 2014, November 2014, and February 2015, MetroPCS did not file suit until November 2015. It stated as recently as February 12, 2015 that it "has no interest in negotiating this matter any further," DE 1, Verif. Compl., Ex. F, but it did not file an action in this Court until more than eight (8) months later. Although MetroPCS's purported good-faith effort to resolve the dispute without litigation is commendable, the premise of a preliminary injunction is that the moving party requires "immediate relief to protect its rights" and cannot afford a delay. *Fox Ins. Co. v. Envision Pharm. Holdings, Inc.*, No. 09-0237, 2009 WL 790312, at *8 (E.D.N.Y. Mar. 23, 2009). As MetroPCS has failed to establish a likelihood of irreparable harm, an analysis of the remaining requirements for the issuance of a preliminary injunction is unnecessary, *see Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66-67 (2d Cir. 2007); *Fox Ins. Co.* 2009 WL 790312, at *6, and the motion for a preliminary injunction is denied.

---

[1] Although MetroPCS also argues that it may suffer a loss of goodwill from its customers in the absence of an injunction, it has not established that its customers would suffer any underlying loss in cellular service that could result in the loss of goodwill. MetroPCS's claim that it could lose goodwill from its customers is therefore speculative and does not rise to a likelihood of irreparable harm.

### III. CONCLUSION

For the reasons stated above, Plaintiff's motion for a preliminary injunction is denied.

**SO ORDERED.**

 s/  Sandra J. Feuerstein  
Sandra J. Feuerstein  
United States District Judge

Dated: January 29, 2016
   Central Islip, New York